Denisse O. Gastélum, SBN 282771
Selene Estrada-Villela, SBN 354994
**GASTÉLUM LAW, APC**
**A Professional Corporation**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com
    sestradavillela@gastelumfirm.com

Attorneys for Plaintiffs, ESTATE OF JOSE MANUEL ZAMUDIO, *et al.*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF JOSE MANUEL ZAMUDIO, by and through successors in interest, Ana Maria Zamora Jara, D.Z, and M.Z; ANA MARIA ZAMORA JARA, individually; D.Z., a minor, by and through her guardian ad litem Maria Garcia Zamudio; M.Z., a minor by and through his guardian ad litem Maria Garcia Zamudio;<br><br>    Plaintiffs,<br><br>    v.<br><br>COUNTY OF MONTEREY, a public entity; MONTEREY COUNTY SHERIFF'S OFFICE, a public entity; JACOB MEALAN, individually; JOSE HERRERA, individually; BRIAN SCARIOT, individually; and DOES 1 through 10, individually, jointly and severally,<br><br>    Defendants. | **CASE NO.: 7:26-cv-1725**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Excessive and Deadly Force/Unreasonable Seizure in Violation of the Fourth Amendment (42 U.S.C. § 1983)<br>2. Interference with Familial Integrity Substantive Due Process Violation (42 U.S.C. § 1983)<br>3. Municipal Liability - Unconstitutional Policy, Practice or Custom (*Monell*, 42 USC § 1983)<br>4. Municipal Liability – Failure to Train, Supervise, Discipline or Correct (*Monell*, 42 USC § 1983)<br>5. Municipal Liability – Ratification (*Monell*, 42 USC § 1983)<br>6. Americans with Disabilities Act (42 U.S.C. § 12101, *et seq.*)<br>7. Negligence (Survival & Wrongful Death)<br>8. Battery by Peace Officer (Survival & Wrongful Death)<br>9. Bane Act Violation (Cal. Civ. Code § 52.1)<br>10. Ralph Act Violation (Cal. Civ. Code § 51.7)<br><br>**DEMAND FOR JURY TRIAL** |

1

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

## I.

## __INTRODUCTION__

1. This civil rights action seeks to establish the true and unequivocal facts surrounding the shooting and killing of Jose Manuel Zamudio by Officers Jacob Mealan, Jose Herrera, and Brian Scariot of the Monterey County Sheriff's Office. This action also seeks to establish the violations of fundamental rights under the United States Constitution in connection with the killing of Jose Manuel Zamudio, on or about January 29, 2025.

2. Jose Manuel Zamudio was the loving father of two children, his daughter D.Z, and his son M.Z, in addition to being an affectionate and attentive family man and husband. He was only 52 years old at the time of his death. Jose Manuel Zamudio had no prior criminal history. His death has been a profound and unimaginable loss to his family, the present Plaintiffs.



3. Jose Manuel Zamudio was unlawfully shot and killed on January 29, 2025, by officers from Monterey County Sheriff's Office. At the time he was shot, Jose Manuel Zamudio did not make threats towards the deputies, did not act aggressively, and posed no danger to them. Rather than use non-lethal means to confront him, officers from Monterey County Sheriff's Office resorted to use of deadly force.

4. Jose Manuel Zamudio did not die immediately. He suffered immensely before succumbing to his gunshot wounds.

5. The killing of Jose Manuel Zamudio was an excessive, unwarranted act of abuse, that resulted in the wrongful and tragic loss of a vulnerable victim's life.

6. Accordingly, this Complaint seeks judicial redress and monetary damages for such constitutional violations.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

## II.

## JURISDICTION AND VENUE

7.    This case is properly heard in United States District Court under federal question jurisdiction, pursuant to 28 U.S.C. § 1331, as it is a civil suit which presents questions arising under the Constitution and the laws of the United States.

8.    Venue is proper in the Northern District of California, pursuant to 28 U.S.C. § 1391(b)(2), as all incidents, events, and occurrences giving rise to this action occurred in the City of Salinas, County of Monterey, State of California.

9.    Plaintiffs timely presented their government claims on July 25, 2025, in compliance with the California Tort Claims Act. The claims were rejected on August 28, 2025. Accordingly, Plaintiffs have therefore complied with all applicable requirements with respect to their claims arising under state law.

10.    With respect to these supplemental state claims, Plaintiffs request that this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such claims, as they arise from the same facts and circumstances which underlie the federal claims.

## III.

## PARTIES

11.    Decedent JOSE MANUEL ZAMUDIO was, at all relevant times, a resident of the City of Salinas, in the County of Monterey, State of California.

12.    The claims made by the ESTATE OF JOSE MANUEL ZAMUDIO, are brought by ANA MARIA ZAMORA JARA, and by D.Z and M.Z, minors by and through their guardian ad litem, Maria Garcia Zamudio, as successors in interest to the ESTATE OF JOSE MANUEL ZAMUDIO pursuant to California Code of Civil Procedure § 377.30. The wrongful death claims are brought pursuant to California Code of Civil Procedure § 377.60.

///

///

3

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

13. Plaintiff ANA MARIA ZAMORA JARA is and was, at all times relevant hereto, the surviving spouse of Decedent JOSE MANUEL ZAMUDIO. Plaintiff brings these claims pursuant to California Code of Civil Procedure § 377.60.

14. Plaintiff D.Z is and was, at all times relevant hereto, the natural daughter of Decedent JOSE MANUEL ZAMUDIO.

15. Plaintiff M.Z. is and was, at all times relevant hereto, the natural son of Decedent JOSE MANUEL ZAMUDIO.

16. Maria Garcia Zamudio is Decedent JOSE MANUEL ZAMUDIO's sister, and appears at all times relevant hereto, solely in her representative capacity as guardian ad litem for Plaintiffs D.Z and M.Z, minors.

17. Defendant COUNTY OF MONTEREY (hereinafter sometimes referred to as "COUNTY) is a municipality with the capacity to sue and be sued. Defendant COUNTY owns, operates, manages, directs, and controls Defendant MONTEREY COUNTY SHERIFF'S OFFICE (hereinafter sometimes referred to as "MCSO"), also a separate public entity which employs other individual Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including MCSO employees, complied with the laws and the Constitutions of the United States and of the State of California.

18. Defendant MONTEREY COUNTY SHERIFF'S OFFICE (hereinafter sometimes referred to as "MCSO"), is a public entity pursuant to Government Code Section 811.2 with the capacity to sue and be sued. *See Streit v. Cnty. of Los Angeles*, 236 F.3d 552 (9th Cir. 2001).

19. Defendant Officer JACOB MEALAN is sued in his individual capacity. At all times relevant hereto, Defendant MEALAN was employed by Defendant COUNTY as an officer at MCSO and was acting under color of law in the course and scope of that employment.

///

4

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

20. Defendant Officer JOSE HERRERA is sued in his individual capacity. At all times relevant hereto, Defendant HERRERA was employed by Defendant COUNTY as an officer at MCSO and was acting under color of law in the course and scope of that employment.

21. Defendant Officer BRIAN SCARIOT is sued in his individual capacity. At all times relevant hereto, Defendant SCARIOT was employed by Defendant COUNTY as an officer at MCSO and was acting under color of law in the course and scope of that employment.

22. Plaintiffs do not know the exact names or titles of other involved individual defendants. However, Plaintiffs seek leave to amend this Complaint to allege such names and titles as that information is ascertained.

23. Each of the Defendants named herein has caused and is responsible for the unlawful conduct and resulting rights violations suffered by Plaintiffs, either through personal participation in the conduct; by acting jointly and in concert with those who did; by authorizing, acquiescing, or failing to take action to prevent or intervene in the unlawful conduct; by promulgating policies or procedures pursuant to which the unlawful conduct occurred; by failing and refusing, with deliberate indifference to the rights and wellbeing of Plaintiffs, Decedent JOSE MANUEL ZAMUDIO, and others similarly situated, to initiate and maintain adequate supervision and/or training of the wrongful actors; or by officially ratifying or endorsing the unlawful conduct of the actors under their supervision, direction, and/or control.

24. Whenever and wherever reference is made in a claim for relief to any act or omission by a Defendant, such allegation and reference shall also be deemed to mean the acts and omissions of each defendant individually, jointly, and severally. Accordingly, each of the individual defendants is sued in their personal capacities for the harms caused by their acts or omissions, whereas the Defendant COUNTY and MCSO are sued vis-a-vis the unconstitutional policies, practices, customs, training

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

failures, and/or official ratifications that were the moving force behind the individual defendants' misconduct.

**IV.**

**FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

25.     On January 29, 2025, JOSE MANUEL ZAMUDIO was present at the Banker's Casino in the City of Salinas. There, he had an alleged altercation with an individual in the parking lot which resulted in him leaving the premises. Salinas Police Department became aware of the alleged altercation and broadcast that they would be looking out for JOSE MANUEL ZAMUDIO and his vehicle.

26.     At all relevant times, JOSE MANUEL ZAMUDIO had suffered and was suffering from mental health conditions.

27.     Just a few hours later, at or around 1:00 PM, JOSE MANUEL ZAMUDIO was spotted driving along Highway 183 between the City of Salinas and the City of Castroville in the County of Monterey. The officer who spotted him, a California Highway Patrol officer whose identity is presently unknown, requested additional assistance to conduct a traffic stop.

28.     MCSO deputies, including Defendants JACOB MEALAN, JOSE HERRERA, and BRIAN SCARIOT, responded to the area. When they attempted to stop JOSE MANUEL ZAMUDIO, he suddenly drove his vehicle off of Highway 183 and into an agricultural field located between Espinosa Road and Cooper Road.

29.     JOSE MANUEL ZAMUDIO exited his vehicle but did not verbally threaten nor engage in any act which would lead the Defendants to believe that they were at risk of imminent threat of death or serious bodily injury.

30.     Once JOSE MANUEL ZAMUDIO exited his vehicle, Defendants shot him. At the time he was shot, JOSE MANUEL ZAMUDIO was not a threat at all.

///

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

31.     The shooting and killing of JOSE MANUEL ZAMUDIO was unjustified and this use of force was unwarranted.[1]

32.     As a direct result of Defendant MEALAN, HERRERA, and SCARIOT'S use of deadly force, JOSE MANUEL ZAMUDIO suffered immensely, succumbing to his gunshot wounds in a slow and painful manner.

33.     As a direct result of the foregoing acts and omissions of Defendants MEALAN, HERRERA, and SCARIOT, Plaintiffs ANA MARIA ZAMORA JARA, D.Z. and M.Z. suffered the loss of JOSE MANUEL ZAMUDIO's love, moral and financial support, expected gifts or benefits, household services, companionship, comfort, care, assistance, protection, affection, and society, as well as the costs of JOSE MANUEL ZAMUDIO's funeral and burial expenses.

34.     Furthermore, as set forth herein, Defendants MEALAN, HERRERA, and SCARIOT acted with willful and conscious disregard for the rights and wellbeing of JOSE MANUEL ZAMUDIO, thereby subjecting him to cruel and unjust hardship. The acts and omissions of Defendants were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling Plaintiffs to recover punitive as well as compensatory damages in order to deter future misconduct by the example of Defendants' punishment.

35.     Finally, the various unconstitutional policies, customs, and/or practices in place at MCSO, primarily regarding the use of excessive and deadly force against members of the public; as well as pervasive failures to adequately train MCSO personnel in mental health crisis recognition and interventions; and the routine permission or encouragement of officer misconduct by MCSO and COUNTY policymakers, were substantial moving forces behind Defendants' conduct towards JOSE MANUEL ZAMUDIO. Further, each of the described realities of the MCSO's

---

[1] Indeed, the shooting and killing of Jose Manuel Zamudio by MCSO Deputies Jacob Mealan, Jose Herrera and Brian Scariot is currently under investigation by the California Department of Justice pursuant to AB 1506.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

unconstitutional operation have directly caused or otherwise provided for rampant uses of unreasonable, excessive, and deadly force against individuals of Mexican descent and other minority suspects like JOSE MANUEL ZAMUDIO and their communities.

36.    Accordingly, the Defendants COUNTY OF MONTEREY and the MONTEREY COUNTY SHERIFF'S OFFICE can and must be held directly liable for the substantial role it played in causing the events of January 29, 2025, and so many other days like it.

## V.

## FIRST CLAIM FOR RELIEF

### Excessive/Deadly Force and Unreasonable Seizure

### Fourth Amendment (42 U.S.C. § 1983)

### By Plaintiff ESTATE OF JOSE MANUEL ZAMUDIO As Against

### Defendants JACOB MEALAN, JOSE HERRERA, BRIAN SCARIOT and

### DOES 1-10

37.    Plaintiffs reallege and incorporate by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

38.    Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT used excessive and deadly force on, and seized, JOSE MANUEL ZAMUDIO by unnecessarily shooting him, while acting under color of law, and in clear and well-established violation of the Fourth Amendment to the United States Constitution.

39.    Under the same or similar circumstances, no reasonable officer would have used force of the manner and to the extent as that used by Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT against JOSE MANUEL ZAMUDIO.

40.    At the time deadly force was used, JOSE MANUEL ZAMUDIO was not armed with a firearm and did not pose an immediate threat of death or serious bodily

8

injury to Defendants JACOB MEALAN, JOSE HERRERA or BRIAN SCARIOT, or anyone else.

41.    It is clearly excessive to shoot someone, in the act of conducting a traffic stop, especially when they do not possess a lethal weapon and are non-threatening. Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT's use of excessive force on JOSE MANUEL ZAMUDIO was clearly unreasonable.

42.    Under the totality of the circumstances, the shooting and killing of JOSE MANUEL ZAMUDIO by Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT were not reasonable in any respect. Defendants' committed clearly established constitutional violations by their conduct, which were known and avoidable, or reasonably should have been known and avoided, by public officials in their position.

43.    Accordingly, the ESTATE OF JOSE MANUEL ZAMUDIO, by and through his successors-in-interest, further claim damages for JOSE MANUEL ZAMUDIO'S loss of value of life, pre-death human suffering, and all attorneys' fees and costs yet incurred and yet to be incurred by the ESTATE in presenting, maintaining, and prosecuting this action, under 42 U.S.C. § 1988.

44.    Due directly to the Defendants' unreasonable resort to deadly force, JOSE MANUEL ZAMUDIO endured great physical and emotional pain and suffering. Defendants, and each of them, directly and proximately caused JOSE MANUEL ZAMUDIO'S death which could have been prevented if aid was rendered to JOSE MANUEL ZAMUDIO. Additionally, JOSE MANUEL ZAMUDIO was caused to needlessly suffer severe physical, psychological, and emotional pain and suffering in the moments leading up to his death, for which his ESTATE is entitled to recover damages.

45.    Further, the conduct of Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT was willful and in conscious disregard of JOSE MANUEL ZAMUDIO'S rights and safety subjected him to cruel and unjust hardship in the

moments leading up to and including his death. Defendants' conduct amounted to a malicious and/or oppressive for which his ESTATE is further entitled to recover punitive damages.

## VI.

## SECOND CLAIM FOR RELIEF

**Interference with Familial Integrity - Substantive Due Process Violation**

**Fourteenth Amendments (42 U.S.C. § 1983)**

**By Plaintiffs ANA MARIA ZAMORA JARA, D.Z. and M.Z. As Against**

**Defendants MONTEREY COUNTY, MONTEREY COUNTY SHERIFF'S**

**OFFICE, JACOB MEALAN, JOSE HERRERA, BRIAN SCARIOT**

**and DOES 1-10**

46.    Plaintiffs reallege and incorporate by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

47.    The substantive due process clause of the Fourteenth Amendment to the United States Constitution guarantees all persons the right to be free from unlawful state interference with their familial relations. 42 U.S.C. § 1983 provides a private right of action for conduct which violates this right.

48.    On January 29, 2025, at or around 1:00 p.m., Defendants JOSE MANUEL ZAMUDIO was followed by officers, including Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT, who attempted to conduct a traffic stop. JOSE MANUEL ZAMUDIO's vehicle veered off of Highway 183 and into an agriculture field. Thereafter, when JOSE MANUEL ZAMUDIO exited his vehicle, Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT used unlawful and excessive force against JOSE MANUEL ZAMUDIO by shooting him. The force used was unreasonable and unjustified under the law. JOSE MANUEL ZAMUDIO died from these injuries.

49.    As alleged above, the shooting and killing of JOSE MANUEL ZAMUDIO was unreasonable under the circumstances of the encounter between him

and Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT. As such, the shooting and killing of JOSE MANUEL ZAMUDIO violated the constitutional limits on police use of deadly force in violation of the Fourth Amendment's limits on unreasonable seizures.

50. At the same time, the shooting and killing of JOSE MANUEL ZAMUDIO by Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT violated the rights of the present Plaintiffs to be free from police interference in their familial relationship with JOSE MANUEL ZAMUDIO.

51. As a direct and proximate cause of unreasonable conduct of Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT, JOSE MANUEL ZAMUDIO died. As a result of the unreasonable conduct of Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT, Plaintiffs lost JOSE MANUEL ZAMUDIO, and were deprived of his love, affection, society, and moral and economic support.

52. The unreasonable conduct of the Defendants JACOB MEALAN, JOSE HERRERA, BRIAN SCARIOT was willful and done with a deliberate disregard for the rights and safety of JOSE MANUEL ZAMUDIO and the present Plaintiffs, thereby warranting the imposition of punitive damages as to Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT.

53. The deprivation of Plaintiffs' familial relationship with JOSE MANUEL ZAMUDIO, was directly and proximately caused by the policies, customs, and practices of the COUNTY and MCSO, including its failure to adequately train and supervise its employees regarding the use of deadly force. Accordingly, Defendant COUNTY is liable to Plaintiffs for compensatory damages pursuant to 42 U.S.C. § 1983.

///

///

///

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

## VII.

## THIRD CLAIM FOR RELIEF

**Municipal Liability – Unconstitutional Policy, Custom, or Practice**

(*Monell*, 42 U.S.C. § 1983)

**By Plaintiff ESTATE OF JOSE MANUEL ZAMUDIO As Against Defendants MONTEREY COUNTY, MONTEREY COUNTY SHERIFF'S OFFICE and DOES 1-10**

54.    Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

55.    The present cause of action is brought pursuant to 42 U.S.C. § 1983; *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Canton v. Harris*, 489 U.S. 378 (1989); and all other relevant federal authority under which Defendants COUNTY and MCSO are liable for the unconstitutional acts and omissions of its employees, agents, and/or representatives, vis-a-vis the policies, customs, and/or practices that were the moving force behind such misconduct.

56.    As set forth in the foregoing claim for relief, Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT committed clear and well-established violations of JOSE MANUEL ZAMUDIO's constitutional rights, under color of law, and while acting within the course and scope of their employment as police officers with Defendant COUNTY and MCSO.

57.    The complete and utter failure of the Defendants COUNTY and MCSO to redress systemic unconstitutional customs and practices and implement procedural safeguards, in all of the ways described in the paragraph to follow, is tantamount to an unconstitutional policy of inaction on account of the facts that: 1) certain unlawful customs or practices have been permitted to grow so widespread commonplace in their usage as to constitute standard operating procedures within the LASD; and 2) the need for more or different training is so obvious, and the inadequacy so likely to result in the

12

violation of constitutional rights set forth herein that the policymakers of the COUNTY and MCSO can be reasonably regarded as deliberately indifferent to this need.

58. On and for some time prior to January 29, 2025  (and continuing to the present date), Defendants COUNTY and MCSO, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of JOSE MANUEL ZAMUDIO, and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

a. Permitting MCSO personnel, such as Defendants MEALAN, HERRERA and SCARIOT, to use excessive and deadly force against members of the public who do not pose an immediate threat of death or serious bodily injury, such as the use of deadly force used against JOSE MANUEL ZAMUDIO;

b. Permitting MCSO personnel, such as Defendants MEALAN, HERRERA and SCARIOT, to resort to use of firearms against individual, such as JOSE MANUEL ZAMUDIO, who are unarmed and not in possession of a firearm themselves;

c. Permitting MCSO personnel to use excessive even after officers have already used force and a perceived threat has been neutralized;

d. Failing to correct repeated excesses of force, and to adequately train, instill, and retrain MCSO personnel on the appropriate standards therefor, de-escalation techniques, familiarity with "less-than-lethal" alternatives to excessive force and confidence in their reliance thereon.

e. Employing and retaining MCSO personnel, including the individual defendants, who are known or reasonably could have been discovered to have high propensities for abusing their authority, omitting crucial duties, mistreating civilians, resorting to excessive force, and failing to follow

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

established agency policies respecting interactions with civilians and their civil rights;

f.  Maintaining vastly inadequate procedures and follow through, if any, for the reporting, investigating, supervising, disciplining, and correcting of intentional misconduct and/or gross negligence by MCSO personnel, including the individual defendants;

g.  Consistently ratifying the intentional misconduct and/or gross negligence of MCSO personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

h.  Encouraging, accommodating, or facilitating a "code of silence" among MCSO personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

i.  Actively facilitating the transfer of problem MCSO personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct, thereby allowing them to evade discipline and, likewise, shielding the MCSO from accountability;

j.  Allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of supervision or authority within the MCSO; and

k.  The many other abuses of power and/or breaches of duty not specifically identified herein.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

59. The structural and administrative features set forth above regardless of whether expressly adopted, informally entrenched as *de facto* customs or practices due to their widespread and longstanding character, or having materialized in the absence of foreseeably necessary safeguards- all constitute standard operating procedures within Defendant COUNTY and MCSO.

60. Clearly, the DEPUTY DEFENDANTS acted pursuant to the foregoing customs and practices and were the moving force behind JOSE MANUEL ZAMUDIO's constitutional violations.

61. As a direct consequence of these realities, the public has endured pervasive misuses of force and/or police killings, lost considerable trust and grown increasingly fearful of local law enforcement, and sustained the exorbitant costs of individualized trauma, family and community destruction, and the perpetual hemorrhaging of public resources in remediation rather than prevention of these problems. In the aggregate, these consequences undermine public safety, wellbeing, liberty, and equity so severely that all COUNTY residents are worse off, therefore.

62. The perpetual torrent of civilian complaints, litigation, and scrutiny by local, state, and national media, academia, and government officials, has rendered the dire state of affairs within the MCSO unignorable and undeniable. At some point well before the death of JOSE MANUEL ZAMUDIO, Defendants COUNTY and MCSO, and each of the individual supervisory officials thereof, whether named or unnamed, achieved actual or constructive knowledge of the forgoing policies, customs, and practices. Nevertheless, Defendants COUNTY and MCSO, by and through its final policymakers, has persisted in tolerating, condoning, or ratifying the above-referenced policies, customs, and practices with deliberate indifference to their unconstitutionality and foreseeable consequences, not least of which resemble those suffered by JOSE MANUEL ZAMUDIO, Plaintiffs, and other individuals similarly situated.

63. But for the sustained deliberate indifference of the Defendants COUNTY and MCSO, and the final policymakers thereof, to the absence or utter inadequacy of

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

procedural safeguards so obviously necessary to the prevention of these readily foreseeable harms, the shooting of JOSE MANUEL ZAMUDIO would, to a reasonable certainty, not have occurred. Therefore, the above-referenced policies, customs, and practices adopted, maintained, or still tolerated by Defendants COUNTY and MCSO, and the final policymakers thereof, are so inextricably connected to the unconstitutional acts and omissions of the individual defendants as to have been the moving force behind them.

64.     Accordingly, Defendants COUNTY and MCSO should not be held any less liable for the harms alleged in all other Claims for Relief, that it caused JOSE MANUEL ZAMUDIO and Plaintiffs through its employees, who at all times acted or failed to act pursuant to the COUNTY and MCSO's own policy of inaction, as previously set forth.

## VIII.

## FOURTH CLAIM FOR RELIEF

**Municipal Liability – Failure to Train, Supervise, Discipline, or Correct**

**(*Monell*, 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF JOSE MANUEL ZAMUDIO As Against Defendants MONTEREY COUNTY, MONTEREY COUNTY SHERIFF'S OFFICE and DOES 1-10**

65.     Plaintiffs reallege and incorporate by reference each of the forgoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

66.     The present cause of action is brought pursuant to 42 U.S.C. § 1983; *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *City of Canton v. Harris*, 489 U.S. 378 (1989); and all other relevant federal authority under which Defendants COUNTY and MCSO, are liable for the unconstitutional acts and omissions of its employees, agents, and/or representatives thereof, vis-a-vis the training failures that were the moving force behind such misconduct.

67. JOSE MANUEL ZAMUDIO was deprived of his civil rights as a result of the Defendants COUNTY and MCSO's failure to train their employees, including Defendants JACOB MEALAN, JOSE HERRERA, and BRIAN SCARIOT.

68. At all relevant times, Defendants MEALAN, HERRERA, and SCARIOT were acting in the course of their employment with the Defendants COUNTY and MCSO, under color of law. The actions and omissions of Defendants MEALAN, HERRERA, and SCARIOT deprived JOSE MANUEL ZAMUDIO of particular rights guaranteed under the laws and Constitutions of the United States and California, as set forth in the relevant, earlier claims for relief.

69. Defendants COUNTY and MCSO's training of Defendants MEALAN, HERRERA, and SCARIOT did not adequately instill the necessary discipline, restraint, and respect for civil rights required of enforcement personnel, especially in light of the Defendants COUNTY and MCSO's decision to continue to employ Defendants MEALAN, HERRERA, and SCARIOT, despite their incompetence.

70. Indeed, on and for some time prior to January 29, 2025 (and continuing to the present date), Defendants COUNTY and MCSO, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of JOSE MANUEL ZAMUDIO, and of persons in his class, situation and comparable position in particular, failed to train their employees in the following regard:

    a.    Failing to train employees by permitting MCSO personnel, such as Defendants MEALAN, HERRERA and SCARIOT, to use excessive and deadly force against members of the public who do not pose an immediate threat of death or serious bodily injury, such as the use of deadly force used against JOSE MANUEL ZAMUDIO;

    b.    Failing to train MCSO personnel, such as Defendants MEALAN, HERRERA and SCARIOT, to resort to use of firearms against

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

individuals, such as JOSE MANUEL ZAMUDIO, who are unarmed and not in possession of a firearm themselves;

c.  Failing to train MCSO personnel to use excessive even after officers have already used force and a perceived threat has been neutralized;

d.  Failing to train employees by failing to correct repeated excesses of force, and to adequately train, instill, and retrain MCSO personnel on the appropriate standards therefor, de-escalation techniques, familiarity with "less-than-lethal" alternatives to excessive force and confidence in their reliance thereon.

e.  Failure to train employees by employing and retaining MCSO personnel, including the individual defendants, who are known or reasonably could have been discovered to have high propensities for abusing their authority, omitting crucial duties, mistreating civilians, resorting to excessive force, and failing to follow established agency policies respecting interactions with civilians and their civil rights;

f.  Failure to train employees by maintaining vastly inadequate procedures and follow through, if any, for the reporting, investigating, supervising, disciplining, and correcting of intentional misconduct and/or gross negligence by MCSO personnel, including the individual defendants;

g.  Failing to train employees by consistently ratifying the intentional misconduct and/or gross negligence of MCSO personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

h.  Failing to train employees by encouraging, accommodating, or facilitating a "code of silence" among MCSO personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

18

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

i. Failing to train employees by actively facilitating the transfer of problem MCSO personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct, thereby allowing them to evade discipline and, likewise, shielding the MCSO from accountability;

j. Failing to train employees by allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of supervision or authority within the MCSO; and

k. Failing to train employees as shown by the many other abuses of power and/or breaches of duty not specifically identified herein.

71. This failure of Defendants COUNTY and MCSO to provide adequate training caused the variously alleged deprivations of JOSE MANUEL ZAMUDIO's rights by the individual defendants; that is, the COUNTY and MCSO's failure to train is so closely related to the deprivation of JOSE MANUEL ZAMUDIO and Plaintiffs' rights as to be the moving force that caused their ultimate injuries. Clearly, Defendants COUNTY and MCSO were deliberately indifferent to the obvious consequences of their failure to train its officers adequately.

72. Defendants COUNTY and MCSO knew that their failure to adequately train its deputies made it highly predictable that its deputies would engage in conduct that would deprive persons, such as JOSE MANUEL ZAMUDIO, of their rights. Defendants COUNTY and MCSO knew that its failure to adequately supervise, direct, and/or coordinate deputies' use of excessive force against members of the public made it highly predictable that its deputies would engage in conduct that would deprive

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

persons, such as JOSE MANUEL ZAMUDIO and Plaintiffs, of their rights. Defendants COUNTY and MCSO are thus deliberately indifferent to the obvious consequences of their failure to train their deputies adequately.

73. Accordingly, the Defendants COUNTY and MCSO are liable for the rights violations perpetrated by its employees, agents, representatives, or officers, including Defendants MEALAN, HERRERA, and SCARIOT, on account of the unacceptable failures in their training that precipitated the various harms set forth in all other claims for relief herein.

## IX.

## FIFTH CLAIM FOR RELIEF

### Municipal Liability – Ratification

### (*Monell*, 42 U.S.C. § 1983)

**By Plaintiff ESTATE OF JOSE MANUEL ZAMUDIO As Against Defendants MONTEREY COUNTY, MONTEREY COUNTY SHERIFF'S OFFICE and DOES 1-10**

74. Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs of this Complaint with the same force and effect as if fully set forth herein.

75. The present cause of action is brought pursuant to 42 U.S.C. § 1983; *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978); *Canton v. Harris*, 489 U.S. 378 (1989); and all other relevant federal authority under which Defendants COUNTY and MCSO are liable for the unconstitutional acts and omissions of its employees, agents, and/or representatives, vis-à-vis the policies, customs, and/or practices that were the moving force behind such misconduct.

76. As set forth in the foregoing claim for relief, Defendants JACOB MEALAN, JOSE HERRERA and BRIAN SCARIOT committed clear and well-established violations of JOSE MANUEL ZAMUDIO's constitutional rights, under color of law, and while acting within the course and scope of their employment as police officers with Defendant COUNTY and MCSO.

20

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

77. The complete and utter failure of the Defendants COUNTY and MCSO to redress systemic unconstitutional customs and practices and implement procedural safeguards, in all of the ways described in the paragraph to follow, is tantamount to an unconstitutional policy of inaction on account of the facts that: 1) certain unlawful customs or practices have been permitted to grow so widespread commonplace in their usage as to constitute standard operating procedures within the LASD; and 2) the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights set forth herein that the policymakers of the COUNTY and MCSO can be reasonably regarded as deliberately indifferent to this need.

78. On and for some time prior to January 29, 2025  (and continuing to the present date), Defendants COUNTY and MCSO, acting with gross negligence and with reckless and deliberate indifference to the rights and liberties of the public in general, and of JOSE MANUEL ZAMUDIO, and of persons in his class, situation and comparable position in particular, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of:

    a.    Ratifying the unconstitutional conduct of MCSO personnel, such as Defendants MEALAN, HERRERA and SCARIOT, in using excessive and deadly force against members of the public who do not pose an immediate threat of death or serious bodily injury, such as the use of deadly force used against JOSE MANUEL ZAMUDIO;

    b.    Ratifying unconstitutional conduct by permitting MCSO personnel, such as Defendants MEALAN, HERRERA and SCARIOT, to resort to use of firearms against individual, such as JOSE MANUEL ZAMUDIO, who are unarmed and not in possession of a firearm themselves;

    c.    Ratifying unconstitutional conduct by permitting MCSO personnel to use excessive even after officers have already used force and a perceived threat has been neutralized;

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

d. Ratifying unconstitutional conduct by failing to correct repeated excesses of force, and to adequately train, instill, and retrain MCSO personnel on the appropriate standards therefor, de-escalation techniques, familiarity with "less-than-lethal" alternatives to excessive force and confidence in their reliance thereon.

e. Ratifying unconstitutional conduct by employing and retaining MCSO personnel, including the individual defendants, who are known or reasonably could have been discovered to have high propensities for abusing their authority, omitting crucial duties, mistreating civilians, resorting to excessive force, and failing to follow established agency policies respecting interactions with civilians and their civil rights;

f. Failure to train employees by maintaining vastly inadequate procedures and follow through, if any, for the reporting, investigating, supervising, disciplining, and correcting of intentional misconduct and/or gross negligence by MCSO personnel, including the individual defendants;

g. Consistently ratifying the intentional misconduct and/or gross negligence of MCSO personnel, either through direct endorsements or sustained acquiescence, and thereby fostering a culture of impunity conducive to rampant misconduct and/or flagrance;

h. Ratifying unconstitutional conduct by encouraging, accommodating, or facilitating a "code of silence" among MCSO personnel, including the individual defendants, pursuant to which false reports are routinely generated, abuses of power covered up, and whistleblowers discouraged or ousted from law enforcement;

i. Ratifying unconstitutional conduct by actively facilitating the transfer of problem MCSO personnel to other stations, divisions, positions, or to other law enforcement agencies altogether, to essentially "bury," erase, dilute, hide, spread out, etc., these problem actors and their misconduct,

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

thereby allowing them to evade discipline and, likewise, shielding the MCSO from accountability;

j.  Ratifying unconstitutional conduct by allowing law enforcement personnel to encourage, intimidate, and compel others to "work in gray," or maintain a "code of silence" or "blue code," regarding unconstitutional abuses in order to collectively insulate each other from accountability, attract and recruit problematic individuals to law enforcement, and improperly or expeditiously promote problem actors into positions of supervision or authority within the MCSO; and

k.  Ratifying the many other abuses of power and/or breaches of duty not specifically identified herein.

79.  This ratification by Defendants COUNTY and MCSO to allow the use of excessive and deadly force and to adopt the conduct of its personnel caused the variously alleged deprivations of JOSE MANUEL ZAMUDIO's rights by the individual defendants; that is, the COUNTY and MCSO's ratification of unlawful conduct is so closely related to the deprivation of JOSE MANUEL ZAMUDIO and Plaintiffs' rights as to be the moving force that caused their ultimate injuries. Clearly, Defendants COUNTY and MCSO were deliberately indifferent to the obvious consequences of endorsement of unlawful conduct.

80.  Defendants COUNTY and MCSO knew that their ratification of unlawful conduct made it clear to its deputies that engagement in  similar unlawful conduct that would deprive persons, such as JOSE MANUEL ZAMUDIO, of their rights, would be tolerated in the future. Defendants  COUNTY and MCSO knew that its failure to adequately supervise, direct, and/or coordinate deputies' use of excessive force against members of the public made it highly predictable that its deputies would engage in conduct that would deprive persons, such as JOSE MANUEL ZAMUDIO and Plaintiffs, of their rights. Defendants COUNTY and MCSO are thus deliberately

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

indifferent to the obvious consequences of their failure to train their deputies adequately.

81.    Accordingly, the Defendants COUNTY and MCSO are liable for the rights violations perpetrated by its employees, agents, representatives, or officers, including Defendants MEALAN, HERRERA, and SCARIOT, on account of the ratification of unlawful conduct that precipitated the various harms set forth in all other claims for relief herein.

## X.

### SIXTH CLAIM FOR RELIEF

**Americans with Disabilities Act**

**(By Plaintiffs against Defendants MONTEREY COUNTY and MONTEREY COUNTY SHERIFF'S OFFICE)**

82.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

83.    At all times relevant, JOSE MANUEL ZAMUDIO was an individual with a disability as defined by the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., including a mental health condition.

84.    Defendants COUNTY and MCSO are public entities as defined under 42 U.S.C. § 12131(1), responsible for the training, supervision, policies, practices, customs, and procedures of their employees, including Defendants MEALAN, HERRERA, and SCARIOT.

85.    Defendants MEALAN, HERRERA, and SCARIOT, acting under color of law, failed to recognize and reasonably accommodate JOSE MANUEL ZAMUDIO's mental health condition in the course of their encounter, causing greater injury with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq.

86.    Defendants MEALAN, HERRERA, and SCARIOT could have reasonably accommodated JOSE MANUEL ZAMUDIO by use of non-lethal means,

by approaching in a non-confrontational manner, and without use of force, including the use of appropriate body language and de-escalation techniques.

87.    Defendants COUNTY and MCSO maintained and ratified polices, customs, and/or practices resulting in JOSE MANUEL ZAMUDIO's death, with deliberate indifference or reckless disregard, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq. Defendants COUNTY and MCSO could have reasonably complied with the Americans with Disabilities Act, 42 U.S.C. § 12101, et seq., by implementing appropriate polices and adequate training to its personnel, including Defendants MEALAN, HERRERA, and SCARIOT, in interacting with qualified individuals under the Americans with Disabilities Act, such as JOSE MANUEL ZAMUDIO, without use of force, and instead with appropriate body language and de-escalation techniques.

88.    As a direct and proximate result of Defendants' actions and inactions, the Defendants COUNTY and MCSO are liable for the rights violations perpetrated by its employees, agents, representatives, or officers, including Defendants MEALAN, HERRERA, and SCARIOT, on account of the unacceptable failures in their compliance with the Americans with Disabilities Act that precipitated the various harms set forth in all other claims for relief herein.

## XI.
## SEVENTH CLAIM FOR RELIEF
### Negligence – Survival and Wrongful Death
### By Plaintiffs ESTATE OF JOSE MANUEL ZAMUDIO, ANA MARIA ZAMORA JARA, D.Z. and M.Z. As Against All Defendants

89.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

90.    The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820, as a public employee, Defendants MEALAN, HERRERA, and SCARIOT, are liable for injuries caused by their acts or omissions to

the same extent as private persons. Under Section 815.2, the defendant public entity, COUNTY, is vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants MEALAN, HERRERA, and SCARIOT. This cause of action is not alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

91.     At all times herein mentioned, Defendants MEALAN, HERRERA, and SCARIOT owed a duty of care to JOSE MANUEL ZAMUDIO. They owed a duty of care to JOSE MANUEL ZAMUDIO to use reasonable care when carrying out their law enforcement duties. Indeed, Defendants MEALAN, HERRERA, and SCARIOT owed a duty of care to JOSE MANUEL ZAMUDIO to only use deadly force which is necessary. *See* Penal Code § 835a. It is undisputed that Defendants MEALAN, HERRERA, and SCARIOT owed JOSE MANUEL ZAMUDIO "duty in tort to act reasonably when employing deadly force against a suspect." *Golick v. State of California*, 82 Cal. App. 5th 1127,1139 (2022)(citing *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622,628 (2013)).

92.     Furthermore, Defendants MEALAN, HERRERA, and SCARIOT also owed JOSE MANUEL ZAMUDIO a duty to follow California law which provides that "Law enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability. Such liability can arise, for example, if the tactical conduct and decisions show, as part of the totality of circumstances, that the use of deadly force was unreasonable."

93.     Despite owing a duty of care, Defendants MEALAN, HERRERA, and SCARIOT breached their duty, and were negligent and unreasonable in their actions and inactions which included but are not limited to:

A. Using deadly force on JOSE MANUEL ZAMUDIO which was not necessary to defend human life;

B. Using deadly force on JOSE MANUEL ZAMUDIO despite him not being an imminent threat of death or serious bodily injury;

C. Using deadly force on JOSE MANUEL ZAMUDIO despite him not having the present ability, opportunity, or apparent intent to carry out an imminent threat of death or serious bodily injury towards the officers;

D. The failure to properly and adequately assess the need to detain, arrest, and use force or deadly force against JOSE MANUEL ZAMUDIO;

E. The negligence tactics and handling of the situation with JOSE MANUEL ZAMUDIO, including pre-shooting negligence;

F. The failure to use alternative means to take into custody including, but not limited to time, space, verbalization, commands, hands-on grappling, non-deadly impact weapons, less-than-lethal weapons and less-than-lethal force; and

G. Defendants MEALAN, HERRERA, and SCARIOT were only able to use "necessary force" and the force used was unnecessary as there existed other "available resources and techniques" including, but not limited to, containment, back-up, and other less than lethal alternatives to use of deadly force including but not limited to verbal commands, counseling, negotiating, less than lethal force, etc.

H. Additionally, California state law, as amended (California Penal Code Section 835a) required that "the decision by a peace officer to use force …be evaluated carefully and thoroughly, in a manner that reflects the gravity of that authority and the serious consequences of the use of force by peace officers, in order to ensure that officers use force consistent with law and agency policies." Instead, Defendants MEALAN, HERRERA, and SCARIOT violated California law and did not do any careful

27

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

evaluation but continued to shoot at JOSE MANUEL ZAMUDIO when he was not posing a threat of harm to them. California law as amended required that Defendants MEALAN, HERRERA, and SCARIOT "take into account that individuals with physical, mental health, developmental, or intellectual disabilities are significantly more likely to experience greater levels of physical force during police interactions, as their disability may affect their ability to understand or comply with commands from peace officers and it is estimated that individuals with disabilities are involved in between one-third and one-half of all fatal encounters with law enforcement." Instead, Defendants MEALAN, HERRERA, and SCARIOT blatantly failed to do anything or try anything other than simply shoot at JOSE MANUEL ZAMUDIO. While California law, as amended, requires that deadly force be used as a last resort, Defendants MEALAN, HERRERA, and SCARIOT, used deadly force as a first resort and continued to use deadly force despite JOSE MANUEL ZAMUDIO not posing any threat of harm to Defendants MEALAN, HERRERA, and SCARIOT or the public.

94. Therefore, Defendants MEALAN, HERRERA, and SCARIOT failed to exercise reasonable care and thereby proximately and foreseeably caused harm to JOSE MANUEL ZAMUDIO.

95. Defendants MEALAN, HERRERA, and SCARIOT breached each and every one of the aforementioned duties owed to JOSE MANUEL ZAMUDIO.

96. As a direct and proximate result of Defendants MEALAN, HERRERA, and SCARIOT's actions and conduct, JOSE MANUEL ZAMUDIO suffered severe damages including severe emotional distress and ultimately loss of life.

97. Accordingly, Defendants MEALAN, HERRERA, and SCARIOT were negligent.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

98.    As a direct result of Defendants MEALAN, HERRERA, and SCARIOT's negligence, Plaintiffs suffered damages, including JOSE MANUEL ZAMUDIO's pain and suffering leading up to his death.

99.    Furthermore, as a direct result of JOSE MANUEL ZAMUDIO's wrongful death, Plaintiffs have suffered and will continue to suffer wrongful death damages. Pursuant to Cal. Civ. Proc. Code § 377.60, *et seq.*, Plaintiffs are entitled to economic and non-economic compensation from Defendants, and each of them, for the loss of JOSE MANUEL ZAMUDIO's moral support, expected gifts or benefits, love, companionship, comfort, care, assistance, protection, affection, society, as well as for the costs of JOSE MANUEL ZAMUDIO's funeral and burial expenses.

100.    Defendants COUNTY and MCSO are vicariously liable for the wrongful acts of Defendants MEALAN, HERRERA, and SCARIOT pursuant to sections 815.2(a) and 820 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to alibility.

101.    Accordingly, Defendants are liable for damages.

## XII.

## EIGHTH CLAIM FOR RELIEF

### Battery by Peace Officer

### By Plaintiffs ESTATE OF JOSE MANUEL ZAMUDIO, ANA MARIA ZAMORA JARA, D.Z. and M.Z. As Against All Defendants

102.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

103.    The present cause of action is brought pursuant to Cal. Gov. Code §§ 815.2 and 820. Under Section 820, as a public employee, individual Defendants MEALAN, HERRERA, and SCARIOT, are liable for injuries caused by their acts or omissions to the same extent as private persons. Under Section 815.2, the defendant public entity, COUNTY, is vicariously liable for injuries caused by the acts or

omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants MEALAN, HERRERA, and SCARIOT. This cause of action is not alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

104. Defendants MEALAN, HERRERA, and SCARIOT while working as employees for COUNTY, and acting within the course and scope of their duties, intentionally shot JOSE MANUEL ZAMUDIO.

105. When Defendants MEALAN, HERRERA, and SCARIOT shot JOSE MANUEL ZAMUDIO, he was unarmed and did not present an imminent threat of death or serious bodily harm to the officers.

106. At all times herein mentioned, law enforcement officers in California were only allowed to use necessary force/reasonable force to effect an arrest, prevent escape, or overcome resistance. Defendants MEALAN, HERRERA, and SCARIOT committed an unconsented touching of JOSE MANUEL ZAMUDIO and battered him when they used unreasonable and excessive deadly force when they shot him. Defendants MEALAN, HERRERA, and SCARIOT's use of deadly force was not necessary to defend human life.

107. As a direct and proximate result of Defendant MEALAN, HERRERA, and SCARIOT's conduct, JOSE MANUEL ZAMUDIO suffered severe emotional distress and ultimately loss of life.

108. Accordingly, Defendants MEALAN, HERRERA, and SCARIOT battered JOSE MANUEL ZAMUDIO.

109. As a direct result of Defendants MEALAN, HERRERA, and SCARIOT, Plaintiffs suffered damages, including JOSE MANUEL ZAMUDIO's pain and suffering leading up to his death.

110. Furthermore, as a direct result of JOSE MANUEL ZAMUDIO's wrongful death, Plaintiffs have suffered and will continue to suffer wrongful death damages.

Pursuant to Cal. Civ. Proc. Code § 377.60, *et seq.*, Plaintiffs are entitled to economic and non-economic compensation from Defendants, and each of them, for the loss of JOSE MANUEL ZAMUDIO's moral support, expected gifts or benefits, love, companionship, comfort, care, assistance, protection, affection, society, as well as for the costs of JOSE MANUEL ZAMUDIO's funeral and burial expenses.

111. Furthermore, Defendants MEALAN, HERRERA, and SCARIOT were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling the recovery of punitive damages.

112. Defendants COUNTY and MCSO are vicariously liable for the wrongful acts of Defendants MEALAN, HERRERA, and SCARIOT pursuant to sections 815.2(a) and 820 of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the scope of the employment if the employee's act would subject him or her to alibility.

113. Accordingly, Defendants are liable for damages.

## XIII.

## NINTH CLAIM FOR RELIEF

### Violation of California Civil Code §52.1

### (Tom Bane Act)

### By Plaintiff ESTATE OF JOSE MANUEL ZAMUDIO

### As Against All Defendants

114. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this Complaint, and any subsequent paragraphs.

115. The present cause of action is brought pursuant to Cal. Civ. Code § 52.1 as well as Cal. Gov. Code §§ 815.2 and 820. Under Section 820, as a public employee, Defendants MEALAN, HERRERA, and SCARIOT, are liable for injuries caused by his acts or omissions to the same extent as private persons. Under Section 815.2, the defendant public entity, COUNTY, is vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

scope of that employment, including Defendants MEALAN, HERRERA, and SCARIOT. This cause of action is not alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

116. Additionally, Cal. Civ. Code § 52.1(b) authorizes a private right of action for damages by any person whose constitutional rights are violated by use of threats, intimidation, or coercion. Importantly, Section 52.1 serves as an analogous state-law basis for bringing excessive/unreasonable force claims as that provided under the Fourth Amendment to the United States Constitution. *See Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105-6 (9th Cir. 2014) (citing *Cameron v. Craig*, 713 F.3d 1012, 1022 (9th Cir.2013) ("[T]he elements of the excessive force claim under § 52.1 are the same as under § 1983.")); *Bender v. Cnty. of L.A.*, 217 Cal.App.4th 968, 976 (2013) ("an unlawful [seizure]—when accompanied by unnecessary, deliberate, and excessive force—is within the protection of the Bane Act.").

117. As previously set forth, Defendants MEALAN, HERRERA, and SCARIOT intentionally used unnecessary, unreasonable, and deadly against JOSE MANUEL ZAMUDIO thereby interfering with JOSE MANUEL ZAMUDIO's following rights:

    a.    Rights to be free from bodily harm as protected by Civil Code Section 43;

    b.    Exercise and enjoyment of his civil rights under the laws and Constitutions of the United States and California, including but not limited to the rights to be free from unreasonable seizure and excessive force (U.S. Const. amend. IV; and Cal. Const. Art. I § 13), the right to due process (U.S. Const. amend. XIV; and Cal. Const. Art. I § 7(a)), and the right to protection from undue restraint and/or harm to life, liberty, and property (Cal. Const. Art. I § 1).

118. From the moment Defendants MEALAN, HERRERA, and SCARIOT first confronted JOSE MANUEL ZAMUDIO, Defendant MEALAN, HERRERA, and

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

SCARIOT exhibited baseless hostility and a determined contempt for the life and wellbeing of JOSE MANUEL ZAMUDIO. Defendants MEALAN, HERRERA, and SCARIOT had absolutely zero reverence for the value of JOSE MANUEL ZAMUDIO's life.

119.    The threats, intimidation, and coercion employed by Defendants MEALAN, HERRERA, and SCARIOT in shooting JOSE MANUEL ZAMUDIO without any prior resort to less-than-lethal alternatives in their possession, while deadly force otherwise remained unnecessary and unreasonable, reflect a clear and specific intent to deprive JOSE MANUEL ZAMUDIO of the aforementioned rights and liberties, and/or a reckless disregard for substantial risks of violations thereof.

120.    Clearly, Defendants MEALAN, HERRERA, and SCARIOT acted with the specific intent to interfere, or attempt to interfere, with JOSE MANUEL ZAMUDIO's right to be free from unreasonable seizures through threats, intimidation, and coercion.

121.    The actions and omissions of Defendants MEALAN, HERRERA, and SCARIOT was a substantial factor in causing JOSE MANUEL ZAMUDIO's death, as, but for the shooting, JOSE MANUEL ZAMUDIO's death could have been prevented.

Therefore, as a direct and proximate result of Defendants MEALAN, HERRERA, and SCARIOT's conduct, JOSE MANUEL ZAMUDIO suffered injuries causing him severe mental, physical, and emotional distress and anguish from which he would ultimately die, and for which the Plaintiffs are entitled to compensation.

122.    Furthermore, as set forth herein, Defendants MEALAN, HERRERA, and SCARIOT acted with willful and conscious disregard for the rights and wellbeing of JOSE MANUEL ZAMUDIO, thereby subjecting him to cruel and unjust hardship.

123.    Accordingly, the actions and omissions of Defendants MEALAN, HERRERA, and SCARIOT were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling Plaintiffs to recover punitive as well as compensatory

damages in order to deter future misconduct by the example of Defendants' punishment, in addition to a multiplier of damages, a civil penalty of $25,000 and the reasonable value of attorneys' fees and costs, as authorized under Cal. Civ. Code § 52.1.

## XIV.

### TENTH CLAIM FOR RELIEF

### Violation of California Civil Code §51.7

### (The Ralph Act)

### By Plaintiff ESTATE OF JOSE MANUEL ZAMUDIO

### As Against All Defendants

124.   Plaintiffs reallege and incorporate by reference each of the foregoing and subsequent paragraphs of this Complaint with the same force and effect as if fully set forth herein.

125.   The present cause of action is brought pursuant to Cal. Civ. Code § 52.1 as well as Cal. Gov. Code §§ 815.2 and 820. Under Section 820, as a public employee, Defendants MEALAN, HERRERA, and SCARIOT, are liable for injuries caused by his acts or omissions to the same extent as private persons. Under Section 815.2, the defendant public entity, COUNTY, is vicariously liable for injuries caused by the acts or omissions of its employees, officers, and agents, committed within the course and scope of that employment, including Defendants MEALAN, HERRERA, and SCARIOT. This cause of action is not alleging direct liability against Defendant COUNTY, only vicarious liability. *See* Cal. Gov. Code § 815.2(a-b); *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1128.

126.   California Civil Code § 51.7 (the Ralph Act) authorizes a private right of action for damages to any person subjected to violence based on their perceived race, color, national origin, etc. Importantly, "nothing in the statute requires that a plaintiff prove that the offending act was motivated by hate." *Ventura v. ABM Industries Inc.*, (2012) 212 Cal. App. 4th 258.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

127. The Ralph Act provides that the conduct that constitutes a violation of the statute is "any violence, or intimidation by threat of violence" on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51 Civ. Code. § 51.7, subd. (a). The identification in the Ralph Act of particular bases of discrimination is illustrative rather than restrictive. *Id.* at (b)(1).

128. The protected characteristics in Section 51 Civ. Code § 51.7 include disability and medical condition with a definition of disability including "mental disability" as defined in 12926 of the Government Code. Government Code § 12926(j) defines mental disability as follows:

> *Having any mental or psychological disorder or condition, such as intellectual disability, organic brain syndrome, emotional or mental illness, or specific learning disabilities, that limits a major life activity*
>
> *. . .*
>
> *Any other mental or psychological disorder or condition not described in paragraph (1) that requires special education or related services . . .*

129. Upon information and belief, Defendants MEALAN, HERRERA, and SCARIOT immediately used deadly force on account of JOSE MANUEL ZAMUDIO's perceived protected characteristic of mental health condition. The use of deadly force constituted violence and Defendants MEALAN, HERRERA, and SCARIOT's substantial motivating reason to use deadly force on JOSE MANUEL ZAMUDIO was due to JOSE MANUEL ZAMUDIO's protected characteristics.

130. Indeed, rather than investigating the situation any further, Defendants MEALAN, HERRERA, and SCARIOT immediately concluded that JOSE MANUEL ZAMUDIO was a threat from the misconception that individuals with mental health conditions are dangerous. Upon Plaintiffs belief, JOSE MANUEL ZAMUDIO was experiencing a mental health crisis but was not in danger of harming anyone.

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

131. Furthermore, JOSE MANUEL ZAMUDIO was a Latino man. A substantial motivating reason for Defendants MEALAN, HERRERA, and SCARIOT's use of deadly force on JOSE MANUEL ZAMUDIO was based upon his protected characteristic of being Latino. Indeed, JOSE MANUEL ZAMUDIO's appearance triggered an irrational and unconstitutional reaction by Defendant MEALAN, HERRERA, and SCARIOT, leading to Defendant MEALAN, HERRERA, and SCARIOT using excessive force on JOSE MANUEL ZAMUDIO.

132. In two decisions construing the language in California's hate crime statutes requiring that the prohibited conduct be committed "because of" the victim's protected characteristic, which is similar to the language of the Ralph Act, the California Supreme Court held that the statutes are violated when a defendant's discriminatory motive is a "substantial factor" in committing the actionable misconduct. *In re M.S.*, 10 Cal. 4th 698, 718-20 (1995); *People v. Superior Court (Aishman)*, 10 Cal. 4th 735, 74 (1995).

133. It is clear that Defendants MEALAN, HERRERA, and SCARIOT's actions were motivated by JOSE MANUEL ZAMUDIO's protected characteristics of being Latino or of having a mental health crisis. Indeed, Defendants MEALAN, HERRERA, and SCARIOT's discriminatory motive was a substantial factor in their decision to shoot JOSE MANUEL ZAMUDIO and it was a substantial factor in causing harm to JOSE MANUEL ZAMUDIO.

134. As a direct result of Defendant MEALAN, HERRERA, and SCARIOT's immediate resort to deadly force, Defendants MEALAN, HERRERA, and SCARIOT needlessly subjected JOSE MANUEL ZAMUDIO to extensive civil rights violations and caused him severe physical, psychological, and emotional pain and suffering which his estate is entitled to recover compensatory damages for.

135. Furthermore, as set forth herein, Defendants MEALAN, HERRERA, and SCARIOT acted with willful and conscious disregard for the rights and wellbeing of JOSE MANUEL ZAMUDIO, thereby subjecting him to cruel and unjust hardship.

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL

136. Accordingly, the actions and omissions of Defendants MEALAN, HERRERA, and SCARIOT were malicious and oppressive under the meaning of Cal. Civ. Code § 3294, entitling Plaintiffs to recover punitive as well as compensatory damages in order to deter future misconduct by the example of Defendants' punishment, in addition to a multiplier of damages, a civil penalty of $25,000 and the reasonable value of attorneys' fees and costs, as authorized under Cal. Civ. Code § 52.1.

## XV.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs requests entry of judgment in their favor and against Defendants as follows:

A. For wrongful death damages pursuant to Cal. Code of Civ. Proc. § 377.60, *et seq.*;

B. For loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60, *et seq.*;

C. For Decedent's coroner fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20, *et seq.*;

D. For violation of Decedent's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20, *et seq.* and federal civil rights law;

E. For Decedent's loss of life and conscious pain, suffering, and disfigurement pursuant to state and federal civil rights law;

F. For general damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

G. For punitive damages against the individual defendants in an amount to be proven at trial;

37

H.    For a multiplier of damages, including treble damages, under the Tom Bane Act and Ralph Act;

I.    For penalties under the Tom Bane Act and Ralph Act;

J.    For interest;

K.    For all other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California and/or federal law; and

L.    For such further relief as the Court may deem proper and just.


Dated: February 27, 2026          **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Selene Estrada-Villela, Esq.
Attorneys for Plaintiffs,
ESTATE OF JOSE MANUEL ZAMUDIO, *et al.*

**COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL**

**DEMAND FOR JURY TRIAL**

Plaintiffs ESTATE OF JOSE MANUEL ZAMUDIO, by and through successors in interest, Ana Maria Zamora Jara, D.Z, and M.Z; ANA MARIA ZAMORA JARA, individually; D.Z., a minor, by and through her guardian ad litem Maria Garcia Zamudio; and M.Z., a minor by and through his guardian ad litem Maria Garcia Zamudio, hereby demand a trial by jury on all claims for relief alleged herein.

Dated: February 27, 2026          **GASTÉLUM LAW, APC**

By: _Denisse O. Gastélum_
Denisse O. Gastélum, Esq.
Selene Estrada-V  illela, Esq.
Attorneys for Plaintiffs,
ESTATE OF JOSE MANUEL ZAMUDIO, *et al.*

COMPLAINT FOR DAMAGES; DEMAND FOR JURY TRIAL